## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Alcon Laboratories, Inc., | Case No.    1:18-cv-00407-NG-RLM |
| Plaintiff, | |
| v. | **DEMAND FOR JURY TRIAL** |
| Lens.com, Inc., | |
| Defendant. | |

### FIRST AMENDED COMPLAINT

Plaintiff Alcon Laboratories, Inc. ("Alcon") brings this action against Defendant Lens.com, Inc. ("Defendant" or "Lens.com") and alleges as follows:

### JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1338(a) (any Act of Congress relating to trademarks); and 28 U.S.C. § 1367 (supplemental jurisdiction).

2.     Lens.com is subject to personal jurisdiction in this State because Lens.com conducts business within this State, including shipments to individuals within this State of the products at issue in this case, several interactive websites targeting customers in this State, and imports of contact lens products into the United States through this State, and such conduct has caused injury to Alcon in this State.  Because Lens.com is subject to personal jurisdiction in this State, it is subject to personal jurisdiction in this District.

3.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) in that a substantial part of the events giving rise to the claims occurred in this District and Lens.com is subject to personal jurisdiction in this District.

**PARTIES**

4.      Plaintiff Alcon, a division of Novartis AG, is a corporation organized and existing under the laws of the State of Delaware, having its corporate offices and principal place of business at 6201 South Freeway, Fort Worth, Texas  76134.

5.      On information and belief, Lens.com, Inc. is a corporation organized and existing under the laws of the State of Nevada, having its principal place of business in Las Vegas, Nevada.  On information and belief, Lens.com operates several nationwide interactive websites, including www.lens.com, targeting contact lens consumers throughout the country, including consumers in New York.  On information and belief, Lens.com stores its inventory of contact lenses at a distribution center in Missouri.

**STATEMENT OF FACTS**

**A.      Alcon's Business**

6.      Alcon was founded in 1947 as a small pharmacy focused on sterile ophthalmic products.  It has developed into a world-renowned developer and manufacturer of contact lenses, prescription eye care products, surgical devices for eye care practitioners, and over-the-counter eye care products.  Its mission is to provide innovative products that enhance quality of life by helping people see better.  Alcon's focus is on patients, as seen in its advanced research and development process, as well as its high standards for manufacturing that exceed basic compliance needs.

7.      Alcon is also a strong advocate for eye health.  In 2017 alone, Alcon supported 554 charitable medical missions through Alcon Cares, Inc., a U.S. foundation, serving more than

2

392,000 patients around the world and facilitating approximately 34,000 surgeries.  Alcon also offers grants through the Alcon Foundation, Inc. to advance and improve the quality of eye health, education, and access to care, and has partnered for over 30 years with Orbis, an international charity that fights blindness, to enhance access to eye care services in the developing world through hands-on training and capacity-building.  Alcon also operates www.myeyes.com, an online resource for vision care for patients that allows them to explore how the eye works and actively manage their ocular health.

8.      Alcon is a leading producer of soft contact lenses in the U.S.  It sells contact lenses under several different brands, including DAILIES®, which are its daily disposable soft contact lenses.  U.S. consumers of Alcon products have come to expect a high level of quality from Alcon, due in large part to the regimented and precise manner in which the products are manufactured, packaged, distributed, and marketed.

9.      Alcon has invested significant resources into conducting clinical trials of and obtaining FDA approval for each of its contact lens products distributed in the United States.  It has also spent over 70 years and millions of dollars in advertising to establish and maintain consumer recognition and confidence in its brands, which rely in large part on recognition of, and confidence in, products bearing Alcon brand names.  These substantial expenditures of time, money, and effort have resulted in a reputation for exceptionally high-quality products, including contact lenses.  For example, Alcon's DAILIES TOTAL1® lenses won the "Contact Lens Product of the Year" award at the U.K.'s 2014 Optician Awards.  Its CLEAR CARE® PLUS with HYDRAGLYDE® contact lens solution was awarded Product of the Year in the Eye Care category of the 2016 Consumer Survey of Product Innovation.

ny-1323140

10.    Alcon vigorously protects its reputation and goodwill by maintaining the highest standards in products, appearance, and customer service.

11.    Alcon does not dictate the pricing of its products.  Alcon's pricing is determined by market forces and independent decisions made by eye care practitioners and online and brick-and-mortar retailers selling legal, compliant Alcon products that do not violate Alcon's intellectual property rights.

**B.    Alcon Has Extensive Connections with New York**

12.    Although Alcon is headquartered in Texas, it is a global company with business partners and customers all around the world.  In particular, Alcon conducts significant business throughout the state of New York.

13.    Alcon's National Account Director of e-Commerce, Richard Fabio, lives on Long Island, New York.  Mr. Fabio is responsible for developing the Alcon Vision Care Lens and Lens Care businesses and executing sales strategies within assigned internet commerce accounts. Mr. Fabio will be a key witness in this case because, on information and belief, all of Lens.com's infringing conduct involves e-commerce as it results from purchases made through websites operated by Lens.com.

14.    Alcon contracts with thousands of retailers and eye care practitioners ("ECPs") in New York to sell Alcon contact lenses throughout the state.  In 2017, Alcon sold nearly $15 million of Alcon contact lenses directly to ECPs located in New York.

15.    Alcon has dozens of employees who live and work in New York, including approximately 17 members of the Alcon Vision Care Lens sales team.  In addition to meeting with individual ECPs to promote and sell Alcon contact lenses, members of the Alcon Vision Care Lens sales team, including those based in New York, regularly attend meetings, conferences, and other events in New York.

4

16.     VisionExpo is the leading vision care conference in the United States.  It hosts a VisionExpo East conference each year in New York.  For decades now, Alcon has attended and had a booth at the VisionExpo East conference to promote its contact lens products and, until this year, its ophthalmic pharmaceutical products.

17.     Just recently, in March 2018, both Alcon and Novartis Pharmaceuticals hosted prominent booths at VisionExpo East, solidifying and expanding their connections with New York-based customers, retailers, distributors, and ECPs.  During the conference, Alcon participated in nearly 100 meetings and events in New York City to continue deepening its relationships with ECPs, customers, and other members of the vision care industry.

### C.     Background on Contact Lenses

18.     Today, nearly 40 million Americans wear contact lenses to correct refractive vision defects.  Contact lenses are medical devices regulated by the U.S. Food and Drug Administration to ensure their safety and efficacy.  According to their labeling, contact lenses require professional care, and thus patients can only obtain them with a valid prescription.

19.     In the United States, about 90 percent of contact lens wearers wear soft contact lenses, which are generally made of soft, flexible, water absorbing plastics or silicone-hydrogel material that allow higher amounts of oxygen to pass through to the cornea.  Most soft contact lenses are replaced daily, weekly, or monthly.

20.     Each contact lens manufacturer uses unique manufacturing processes and often unique materials to produce its contact lenses.  The manufacturing process and material affect how contact lenses fit, how they correct vision, and the level of comfort they provide.  Moreover, different contact lens brands vary on such features as base curve (the back curvature of the contact lens, measured in millimeters), diameter (the distance across a lens between one edge of the contact lens to the other edge), material (chemical make-up of the plastic), lens shape (type of

5

curvatures on the front and back surfaces of the lens), flexure (flexibility of the lens on the eye), oxygen transmissibility (amount of oxygen that passes through the lens), water content (percentage of water/solution absorbed by the lens material), surface wettability (ease with which tears adhere to the lens surface), center thickness (thickness at the center of the lens), edge thickness (thickness at edge of the lens), edge design (shape of the lens edge), surface characteristics/treatments, UV blocking, and interaction with lens care solutions.

21.     Different combinations of these features affect the fit, efficacy, and safety of patients' contact lenses.  Thus, the professional judgment of an ECP, such as an optometrist or ophthalmologist, is required to select the appropriate pair of contact lens for each patient.  In particular, soft contact lenses should cover the cornea adequately and center properly, while also being able to move enough to flush cellular and tear debris from behind the lenses, remain stable on the eye, transmit oxygen, and optically correct vision.

### D.     Alcon's DAILIES AQUACOMFORT PLUS®, O2 OPTIX®, AIR OPTIX® Colors and AIR OPTIX® plus HYDRAGLYDE® Contact Lenses

#### i.     DAILIES AQUACOMFORT PLUS® Products

22.     Beginning in May 2017, Alcon introduced new product packaging for its DAILIES AQUACOMFORT PLUS® sphere contact lenses distributed in the United States, a product that is often prescribed to patients who have not previously worn soft contact lenses:

**90-Pack Front of Packaging**



**90-Pack Back of Packaging**



**30-Pack Front of Packaging**     **30-Pack Back of Packaging**



24.     The new product packaging includes several new patient-friendly educational elements, including (i) readily accessible detailed insertion and removal instructions, (ii) a toll-free patient helpline and email address to permit patients to contact Alcon directly with questions, and (iii) a dedicated DAILIES® website address for more at-home and online support.



25.    To enhance its ability to communicate with ECPs and patients regarding issues that might affect the safety or efficacy of its contact lens products, Alcon also added U.S.-specific lot numbers to the new packaging.  These lot numbers can be used by Alcon to track its contact lens products through its supply chain in the event that Alcon needs to notify ECPs or patients regarding any issues related to the safety or efficacy of the lenses, including, for example, any inaccuracies in the corrective power of the lenses.



26.     Alcon also updated the design of the front panel of the packaging, including the addition of its LIGHTSTREAM® technology trademark.



27.     Finally, so that patients and ECPs in the U.S. can readily confirm they are receiving the benefits of the new packaging, Alcon added an American flag to the boxes.



28.     Alcon first announced the new U.S.-specific packaging to the eye care industry in a media alert issued on November 12, 2016.  Alcon did not limit its media alert to entities with whom it had a direct relationship because it wanted everyone who sold DAILIES AQUACOMFORT PLUS® lenses in the United States to have advance notice of the packaging change so that they would have adequate time to update their inventory with the new products. Starting in spring 2017, Alcon sent additional follow-up communications regarding the packaging change to customers, authorized distributors, retailers, and ECPs.

29.     Beginning in May 2017, Alcon provided DAILIES AQUACOMFORT PLUS® lenses with the U.S.-specific packaging directly to larger customers, such as Walmart and Costco, to authorized distributors, and to retailers with whom it had reseller agreements.  To prevent confusion that could result if different versions of the DAILIES AQUACOMFORT PLUS® lens packaging were available in the market at the same time, and to make sure that all patients received the benefits of the additional information on the new U.S.-specific packaging, Alcon required all customers, authorized distributors, and retailers with whom it had a contract to stop selling DAILIES AQUACOMFORT PLUS® products in the prior packaging by June 16, 2017.  They could then exchange any remaining products in their inventory for new U.S.-specific boxes of DAILIES AQUACOMFORT PLUS® contact lenses.  Alcon's sales representatives worked directly with ECPs to assist in exchanging any older boxes in their inventories for new U.S.-specific boxes of DAILIES AQUACOMFORT PLUS® contact lenses.

30.     Alcon also provided customers, authorized distributors, retailers with whom it had contracts, and ECPs with photographs (i.e., box shots) and other marketing materials featuring the new packaging for the DAILIES AQUACOMFORT PLUS® products and asked that they

10

update their marketing materials.  These marketing materials were made available to Alcon's

partners through its marketing portal website at www.alconODmarketing.com.

31.     During July 2017, Alcon also sent letters to retailers with whom it did not have a

relationship reminding them of the packaging change and informing them that the older

DAILIES AQUACOMFORT PLUS® product packaging was not authorized for sale in the

United States after June 16, 2017.

32.     To ensure compliance with its requirement that products in the prior packaging be

exchanged for products in the new U.S.-specific packaging, Alcon carefully monitored the return

process for DAILIES AQUACOMFORT PLUS® products, and, during July 2017, sent letters to

customers, authorized distributors, retailers under contract, and ECPs whom it believed had not

returned their inventory of DAILIES AQUACOMFORT PLUS® products in the prior packaging.

On information and belief, substantially all of the prior DAILIES AQUACOMFORT PLUS®

products were exchanged by Alcon's customers, authorized distributors, retailers under contract,

and ECPs by July 31, 2017, but not quite all.  Accordingly, Alcon sent a further communication

to all customers, retailers with whom it had contracts, and ECPs reminding them of the

importance of exchanging products in the prior packaging in their inventory for products with the

updated packaging.  Alcon also informed them that continued sales of DAILIES

AQUACOMFORT PLUS® products with the older packaging would likely confuse patients and

would be considered trademark infringement in the United States.

33.     Further, Alcon regularly reviewed the websites of its customers, authorized

distributors, retailers under contract, and ECPs to ensure that they had removed any depictions of

the older DAILIES AQUACOMFORT PLUS® products.  To the extent that they had not, Alcon

contacted them during the summer of 2017 to remind them of the packaging change and to

ny-1323140

reiterate that the marketing materials and websites needed to be updated to show only the DAILIES AQUACOMFORT PLUS® products with the U.S.-specific packaging.

### ii.      O2 OPTIX® Products

34.     Another contact lens product that Alcon manufactures is the O2 OPTIX® product. In an effort to streamline its product line, Alcon discontinued providing complimentary "fit sets" for the O2 OPTIX® lenses to ECPs in the United States for use in fitting patients with O2 OPTIX® contact lenses in 2011.  Because ECPs do not normally prescribe contact lenses without first doing a fitting with a complimentary fit set, Alcon discontinued the O2 OPTIX® products in the United States in late 2013, and stopped distributing the O2 OPTIX® lenses in the U.S. in early 2014.  Alcon now distributes the O2 OPTIX® products only in certain countries outside of the United States.

### iii.     AIR OPTIX® Colors Products

35.     Alcon also offers colored contact lenses that allow patients to change the appearance or color of their eyes.  It markets some of these products under the AIR OPTIX® Colors trademarks.

36.     Over the years, a market has developed for counterfeit contact lenses, including in the United States, particularly for non-corrective colored contact lenses.  Alcon regularly works with U.S. Customs and law enforcement to seize counterfeits of its AIR OPTIX® Colors products.  Many of the counterfeit products come in packaging that looks genuine.

### iv.      AIR OPTIX® plus HYDRAGLYDE® Products

37.     In January 2018, Alcon introduced new U.S.-specific packaging for its AIR OPTIX® plus HYDRAGLYDE® contact lenses:

12



38.     The new U.S.-specific AIR OPTIX® plus HYDRAGLYDE® boxes feature many of the same benefits as the new DAILIES AQUACOMFORT PLUS® boxes, including (i) readily accessible detailed insertion and removal instructions, (ii) a toll-free patient helpline and email address to permit patients to contact Alcon directly with questions, and (iii) a dedicated AIR OPTIX® website address for more at-home and online support.  So that U.S. patients and ECPs can readily confirm that they are receiving the benefits of the new product packaging, Alcon also added an American flag to the new U.S.-specific AIR OPTIX® plus HYDRAGLYDE® boxes.

39.     The new U.S.-specific AIR OPTIX® plus HYDRAGLYDE® packaging differs from the "Global" packaging for AIR OPTIX® plus HYDRAGLYDE® lenses, which was introduced in 2016 and never distributed by Alcon in the U.S.  The Global packaging conforms to regulations in Canada, the European Union, Australia, and Japan, and is distributed by Alcon only in those countries:



In addition to differences in the graphics on the front of the boxes, the Global AIR OPTIX® plus HYDRAGLYDE® boxes do not have (i) detailed insertion and removal instructions, (ii) a toll-free patient helpline and email address, (iii) a dedicated AIR OPTIX® website address, or (iv) an identifying American flag.

40.     Additionally, the new U.S.-specific packaging differs from the "Rest of World" packaging for AIR OPTIX® plus HYDRAGLYDE® lenses.  The Rest of World AIR OPTIX® plus HYDRAGLYDE® packaging, which was launched in July 2017, conforms with regulations in all countries *except* the U.S., Canada, the European Union, Australia, and Japan, and is offered for sale only outside of the U.S., Canada, the European Union, Australia, and Japan:



In addition to differences in the graphics on the front of the boxes, the Rest of World AIR OPTIX® plus HYDRAGLYDE® boxes do not have (i) detailed insertion and removal instructions, (ii) a toll-free patient helpline and email address, (iii) a dedicated AIR OPTIX® website address, or (iv) an identifying American flag.

**E.     Alcon's Quality Control Processes**

41.     Alcon contact lenses are subjected to a variety of inspections and tests as part of the manufacturing process.  If any standard is not met, the entire batch, which may include up to 25,000 lenses, is scrapped.  If a batch passes, each lens is placed in a blister pack and covered with foil, which is heat sealed.  The packs are autoclaved for sterilization.

42.     Alcon takes several additional steps to make sure its lenses are not contaminated.  To start, it uses specialized warehouses that are regularly audited by Alcon and various health authorities, including the FDA.  In addition, it uses only new, heat-treated wood pallets to avoid the cross-contamination that can occur if contact lenses are stored on reused pallets that previously stored toxic chemicals or were exposed to mold.

43.     Alcon also tests its lenses to make sure they meet the applicable regulatory standards where they will be sold.  Alcon determines distribution channels after confirming

which standards its lenses meet, and segregates them in its supply chain management system according to distribution channel.  With respect to products that Alcon does not distribute in the United States, such as O2 OPTIX® lenses and AIR OPTIX® plus HYDRAGLYDE® lenses in non-U.S. packaging, Alcon tests these lenses only for compliance with the applicable standards in the markets in which they will be distributed.

### F.   Alcon's Intellectual Property Rights

44.    Alcon has taken all appropriate steps to protect its rights in the trademarks and trade dress used for its DAILIES AQUACOMFORT PLUS® products, O2 OPTIX® products, AIR OPTIX® Colors products, and AIR OPTIX® plus HYDRAGLYDE® products.  Specifically, Alcon owns the registrations and applications set forth below for its ALCON® mark (collectively, the "ALCON Marks").

45.    Alcon owns U.S. Trademark Registration No. 1,055,870 for the mark ALCON® for "cleaning, wetting, and soaking solutions for contact lenses," which issued on January 11, 1977.  Alcon filed an affidavit under Section 15 of the Lanham Act on July 30, 1982, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Alcon's exclusive right to use the ALCON® trademark for the registered goods.

46.    Alcon owns U.S. Trademark Registration No. 3,964,835 for the stylized ALCON® mark shown below for "cleaning, wetting, and soaking solutions for contact lenses," which issued on May 24, 2011.  Alcon filed an affidavit under Section 15 of the Lanham Act on October 26, 2016, which was acknowledged by the United States Patent and Trademark Office. As a result, the registration is incontestable and considered to be conclusive evidence of the

validity of the mark and registration, and of Alcon's exclusive right to use the stylized ALCON®

trademark for the registered goods.



47.     Alcon owns U.S. Trademark Registration No. 4,560,685 for the mark ALCON®

for "contact lenses," which issued on July 1, 2014.  The registration is considered to be prima

facie evidence of the validity of the mark and registration, and of Alcon's exclusive right to use

the ALCON® trademark for the registered goods.

48.     Alcon also owns U.S. Trademark Registration No. 5,412,293 for the stylized

ALCON® mark shown below for "contact lenses," which issued on February 27, 2018.  This

application was filed on July 26, 2017, and claims a first use anywhere and first use in commerce

date of December 31, 2013.  The registration is prima facie evidence of the validity of the mark

and registration, and of Alcon's exclusive right to use the stylized ALCON® trademark for the

registered goods.



49.     Alcon also owns four copyrights in the DAILIES AQUACOMFORT PLUS®

packaging visual artwork.  These copyrights have been registered with the U.S. Copyright

Office under Registration Nos. VA 2-090-281, VA 2-090-283, VA 2-095-867, and VA 2-095-

868.

16

50.     Alcon's parent, Novartis AG, owns the registrations and application below for marks that are used on Alcon's DAILIES AQUACOMFORT PLUS® products (collectively, the "ALCON DACP Marks").

51.     Novartis owns U.S. Trademark Registration No. 5,137,710, for the mark AQUACOMFORT PLUS® for "contact lenses," which issued on February 7, 2017.  The registration is considered to be prima facie evidence of the validity of the mark and registration, and of Alcon's exclusive right to use the AQUACOMFORT PLUS® trademark for the registered goods.

52.     Novartis also owns U.S. Registration No. 4,556,224, for the Teardrop Logo shown below for "contact lenses," which issued on June 24, 2014.  The registration is considered to be prima facie evidence of the validity of the mark and registration, and of Alcon's exclusive right to use the Teardrop Logo for the registered goods.



53.     Novartis also owns U.S. Trademark Registration No. 3,687,534, for the mark AQUACOMFORT® for "contact lenses," which issued on September 22, 2009.  Novartis filed an affidavit under Section 15 of the Lanham Act on September 9, 2015, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the AQUACOMFORT® trademark for the registered goods.

54.     Novartis also owns U.S. Trademark Registration No. 2,924,933, for the mark LIGHTSTREAM® for "contact lenses and optical lenses," which issued on February 8, 2005.

17

Novartis filed an affidavit under Section 15 of the Lanham Act on December 27, 2014, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the LIGHTSTREAM® trademark for the registered goods.

55.     Novartis also owns U.S. Registration No. 3,555,421 for the mark DAILIES AQUACOMFORT PLUS® for "contact lenses," which issued on December 30, 2008.  Novartis filed an affidavit under Section 15 of the Lanham Act on October 24, 2014, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the DAILIES AQUACOMFORT PLUS® trademark for the registered goods.

56.     Novartis also owns U.S. Application Serial No. 87/586,440 for the trade dress for the front panel of the DAILIES AQUACOMFORT PLUS® products shown below for "contact lenses."  This application was filed on August 28, 2017, and claims a first use anywhere and first use in commerce date of May 31, 2017.  This application was published for opposition in the *Official Gazette* on April 10, 2018.  If no opposition is filed by May 10, 2018, the trade dress will be registered by the United States Patent and Trademark Office in about four months.



18

57.     Novartis also owns the registrations below for marks that are used on Alcon's O2 OPTIX® products (collectively, the "O2 OPTIX Marks").

58.     Novartis owns U.S. Registration No. 2,946,628 for the mark O2® for "contact lenses," which was issued on May 3, 2005.  Novartis filed an affidavit under Section 15 of the Lanham Act on February 19, 2001, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the O2® trademark for the registered goods.

59.     Novartis owns U.S. Registration No. 3,308,130 for the mark O2 OPTIX® for "contact lenses," which issued on October 9, 2007.  Novartis filed an affidavit under Section 15 of the Lanham Act on December 31, 2016, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the O2 OPTIX® trademark for the registered goods.

60.     Novartis owns U.S. Registration No. 3,308,131 for the stylized O2 OPTIX® mark shown below for "contact lenses," which issued on October 9, 2007.  Novartis filed an affidavit under Section 15 of the Lanham Act on December 31, 2016, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the stylized O2 OPTIX® trademark for the registered goods.



61.     Novartis also owns the registrations below for marks that are used on Alcon's AIR OPTIX® Colors and AIR OPTIX® plus HYDRAGLYDE® products (collectively, the "AIR OPTIX Marks").

62.     Novartis owns U.S. Registration No. 3,490,248 for the mark AIR OPTIX® for "contact lenses," which was issued on August 19, 2008.  Novartis filed an affidavit under Section 15 of the Lanham Act on April 22, 2014, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the AIR OPTIX® trademark for the registered goods.

63.     Novartis owns U.S. Registration No. 3,490,249 for the stylized AIR OPTIX® mark shown below for "contact lenses," which was issued on August 19, 2008.  Novartis filed an affidavit under Section 15 of the Lanham Act on May 9, 2014, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the stylized AIR OPTIX® trademark for the registered goods.



64.     Novartis owns U.S. Registration No. 4,674,449 for the mark AIR OPTIX COLORS® for "contact lenses," which was issued on January 20, 2015.  The registration is considered to be prima facie evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the AIR OPTIX COLORS® trademark for the registered goods.

65.     Novartis owns U.S. Registration No. 5,146,779 for the mark AIR OPTIX PLUS HYDRAGLYDE® for "contact lenses," which issued on February 21, 2017.  The registration is considered to be prima facie evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the AIR OPTIX PLUS HYDRAGLYDE® trademark for the registered goods.

66.     Novartis owns U.S. Registration No. 5,186,616 for the mark HYDRAGLYDE® for "contact lenses," which issued on April 18, 2017.  The registration is considered to be prima facie evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the HYDRAGLYDE® trademark for the registered goods.

67.     Novartis also owns U.S. Application Serial No. 87/835,553 for the trade dress shown below for "contact lenses."  This application was filed on March 15, 2018.



68.     Novartis also owns U.S. Registration No. 3,429,280 for the CIBA VISION® mark for "contact lenses," which issued on May 20, 2008.  Novartis filed an affidavit under Section 15 of the Lanham Act on November 7, 2017, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the CIBA VISION® trademark for the registered goods.  The CIBA VISION® mark is used on the packaging for the O2 OPTIX® lenses.

69.     Novartis also owns U.S. Registration No. 4,425,860 for the stylized CIBA VISION® mark shown below for "contact lenses," which issued on October 29, 2013.  The registration is considered to be prima facie evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the stylized CIBA VISION® trademark for the registered goods.  The stylized CIBA VISION® mark is also used on the packaging for the O2 OPTIX® lenses.



70.     As a result of Alcon's expenditures and efforts, the ALCON Marks, the ALCON DACP Marks, the O2 OPTIX Marks, the AIR OPTIX marks, the CIBA VISION mark, and the stylized CIBA VISION mark (collectively, "the ALCON Contact Lens Marks") have come to signify the high quality of Alcon's contact lens products.  They have incalculable reputation and goodwill, belonging exclusively to Alcon and its parent, Novartis AG.

**G.     Lens.com's Business and Wrongful Conduct**

**i.     Lens.com's Business and New York Contacts**

71.     Lens.com, through its various websites, advertises and sells contact lenses directly to consumers.  Lens.com owns "the largest independently held inventory of contact lenses" which it stores at a distribution center in Missouri.  When orders are placed on one of Lens.com's websites, they are shipped from that distribution center directly to customers, including customers in New York.  *See About Lens.com*, https://www.lens.com/about-us/ (last visited March 18, 2018).  On information and belief, Lens.com is now one of the largest unauthorized retailers of Alcon contact lenses in the United States.  According to third-party data, Lens.com's sales for the twelve months ending in February 2018 were nearly $115 million, representing over 12% of the internet soft contact lens market in the United States.

72.     For several years, Alcon has had business discussions with Lens.com's CEO and founder, Cary Samourkachian, regarding opportunities for Lens.com to become an authorized retailer of Alcon products or to buy Alcon products directly from Alcon.  Some of these discussions were initiated by Alcon and some were initiated by Mr. Samourkachian.  Lens.com has rejected every Alcon proposal, including most recently in early 2018, despite the fact that Alcon has similar relationships with many other major retailers.

73.     Based upon test buys that Alcon has conducted, discussed *infra* paragraph 81 *et seq.*, Alcon has determined that Lens.com has sold and shipped from Missouri multiple contact lens orders to purchasers in New York, including shipments of the contact lenses at issue in this litigation, and continues to ship such products to New York.

74.     Additionally, on information and belief, Lens.com operates several highly interactive, nationally-targeted websites, including www.lens.com, as well as www.justlenses.com, www.contactsamerica.com, and www.eurolens.com.  These websites can be accessed by anyone in the United States, allowing a potential contact lens customer to view Lens.com's current inventory and select her desired lenses for purchase.  Any contact lens customer in the United States can easily create an account at any of these websites by entering her email address and a password, and can then enter and save her billing and shipping information, as well as her contact lens prescription(s).  A prospective contact lens customer can then order contact lenses directly through each of these websites—to be shipped anywhere in the United States, including to New York.

75.     If a potential customer has a question or concern for Lens.com, she can use the live chat feature to contact the company by clicking on either the "Customer Service Available 24/7 Live Chat" link displayed prominently on the top of the www.lens.com website, the "I'm

Online LIVE HELP" box that pops up on the side of the screen after the customer has been on any of the pages within the www.lens.com website for more than a few seconds, or the large, red "Need Help?  It looks like you could use some help.  Chat Now!" box that occasionally pops up in the center of the screen while the customer is browsing.  On information and belief, Lens.com contracts with New-York based LivePerson, Inc. for the live chat feature on the www.lens.com website.



76.     Moreover, potential customers from anywhere in the United States can contact Lens.com through the nationwide toll-free telephone number featured on its websites, listed as "1-800 LENS.COM," or through a local Missouri phone number.  Customers can also contact Lens.com by writing to the Missouri mailing address listed on the www.lens.com website.

77.     Lens.com also makes customer reviews available on its www.lens.com website, on a page titled "Customer Reviews and Feedback."  It currently lists 5,485 customer reviews. Each review is followed by the customer's first name, state of residence, and the number of orders that customer has placed.  Hundreds of these reviews were written by customers in New

York.  Many of these New York customers reported placing multiple orders with Lens.com—in some cases as many as 42 orders.

78.     Additionally, Lens.com operates a blog within its www.lens.com website called "eyeSTYLE," which features lifestyle, technology, health, and other advice relating to contact lenses.  Such topics include "Contact Lens Expiration," "Can You Use Water Instead of Lens Solution?," "How to Relieve Computer Eye Strain," and more.  This blog can be accessed by anyone in the United States and elsewhere.  On the side of the blog, Lens.com lists its various social media pages and the number of fans on each, including its 15,070 Facebook "fans" and 9,797 Twitter "followers."  On information and belief, many of these "fans" and "followers" are New York residents.

79.     Lens.com procures a large number of Alcon lenses from outside of the United States, especially from India.  Lens.com imports hundreds of thousands of dollars' worth of contact lenses—including the Alcon lenses at issue in this case—into the United States through John F. Kennedy International Airport in Queens, New York.

80.     In addition, because Lens.com is required to verify prescriptions before it fulfills contact lens orders, Alcon is informed and believes that Lens.com routinely calls ECPs practicing in New York to verify prescriptions for New York-based customers that do not submit copies of their prescriptions with their orders, or whose prescriptions have expired.

### ii.     Lens.com's Sales and Shipments of Alcon Products

### a)     DAILIES AQUACOMFORT PLUS® Shipments

81.     Beginning on August 1, 2017, Alcon conducted test buys to ensure that only products in U.S.-specific DAILIES AQUACOMFORT PLUS® packaging were being sold in the United States.  It purchased products from a variety of online sources, including retailers who had contracts with Alcon and retailers who were not under contract with Alcon.  While the

25

majority of the retailers shipped DAILIES AQUACOMFORT PLUS® products in the updated
and authorized packaging, a handful of them did not, including Lens.com, which sold and
shipped DAILIES AQUACOMFORT PLUS® products in packaging that is not authorized for
sale in the United States.  In some cases, Lens.com shipped one U.S.-specific box of DAILIES
AQUACOMFORT PLUS® lenses and one box of DAILIES AQUACOMFORT PLUS® with the
prior packaging in fulfilling the same order.

      82.     Lens.com advertises DAILIES AQUACOMFORT PLUS® with the prior
packaging on its www.lens.com website, as well as on its affiliated websites, including
www.justlenses.com, www.contactsamerica.com, and www.eurolens.com, but then ships
DAILIES AQUACOMFORT PLUS® products with both the prior packaging and the new U.S.-
specific packaging.  By advertising the outdated DAILIES AQUACOMFORT PLUS® packaging
on its websites, Lens.com infringes Alcon's trademark rights in its ALCON Contact Lens Marks.
Additionally, Lens.com misleads consumers into thinking those products are approved for sale in
the U.S., when they are not.  Finally, by advertising the outdated packaging, yet shipping
products in both the new U.S.-specific and the outdated packaging, Lens.com falsely advertises
its available inventory.



ny-1323140

83.     Lens.com promotes DAILIES AQUACOMFORT PLUS® products using multiple outdated packaging images through its various email advertisements, including the following:



84.     Based upon Alcon's test buys, Alcon has determined that Lens.com has sold and shipped multiple contact lens orders to purchasers in New York, including shipments of DAILIES AQUACOMFORT PLUS® products in the prior packaging, and continues to ship such products to New York.  For example, Lens.com filled a New York order placed as recently as December 27, 2017 with DAILIES AQUACOMFORT PLUS® products in the prior packaging.

85.     The DAILIES AQUACOMFORT PLUS® contact lens products that Lens.com is selling and shipping to patients in the United States are materially different from the DAILIES AQUACOMFORT PLUS® contact lens products that Alcon has authorized for sale in the United States and that are being sold by distributors and resellers who exchanged their older product inventory for products with the updated U.S.-specific packaging in 2017.  Specifically, the products sold by Lens.com lack (i) U.S.-specific lot numbers, (ii) readily accessible detailed

27

insertion and removal instructions, (iii) a toll-free patient helpline and email address to permit patients to easily contact Alcon directly with questions, (iv) a dedicated DAILIES® website address for at-home and online support, and (v) the American flag.  Additionally, the packaging for the DAILIES AQUACOMFORT PLUS® products sold by Lens.com retains content that Alcon no longer features on its U.S.-specific DAILIES AQUACOMFORT PLUS® sphere lens product, including text in languages other than English and Spanish, as well as Japanese regulatory text and a registration number.  Both the front and the back of the packaging differ from the authorized DAILIES AQUACOMFORT PLUS® packaging, as shown below.

| U.S.-Specific Alcon Packaging | Packaging used by Lens.com |
|---|---|
|  |  |

86.     Lens.com's sale of contact lens products in packaging that is materially different from the DAILIES AQUACOMFORT PLUS® packaging that Alcon distributes in the United States causes consumers to be confused, or to believe that the DAILIES AQUACOMFORT PLUS® product packaging sold by Lens.com is the same as the DAILIES AQUACOMFORT

PLUS® product packaging sold by Alcon in the United States, when it is not.  Consumers who receive a single order with DAILIES AQUACOMFORT PLUS® products in the new U.S. packaging together with DAILIES AQUACOMFORT PLUS® products in the prior packaging will be particularly confused as they will receive products that are materially different from each other in a single order.  As such, Lens.com's sales of DAILIES AQUACOMFORT PLUS® contact lens products in prior packaging violate Sections 32 and 43(a) of the Lanham Act.

87.      Lens.com's sales of DAILIES AQUACOMFORT PLUS® contact lens products in the prior packaging also deprive contact lens patients in the United States of important safety and usage information that Alcon includes on the packaging that it uses for DAILIES AQUACOMFORT PLUS® contact lenses that are distributed in the United States.  Lens.com's sales also deprive Alcon of the ability to rely on its U.S.-specific lot number system to notify U.S. ECPs and patients in the event that there is an issue with any of its DAILIES AQUACOMFORT PLUS® products.  Each of these consequences, among others, negatively impacts the safety and well-being of contact lens consumers, and harms Alcon's reputation and goodwill.

### b)    AIR OPTIX® Colors Shipments

88.      In late spring of 2017, Alcon conducted numerous test buys to ensure that only authorized AIR OPTIX® Colors contact lenses were being sold in the United States.  It bought AIR OPTIX® Colors products from a variety of online sources, including websites operated by Lens.com.  When Alcon tested the AIR OPTIX® Colors lenses that it purchased from Lens.com, it found that 60% of these lenses were not compliant with U.S. regulations.  This means that Lens.com is selling AIR OPTIX® Colors lenses from batches that were not intended for distribution or sale in the United States, and had in fact been previously segregated by Alcon for sale only outside of the United States.

29

89.     Because the AIR OPTIX® Colors lenses shipped by Lens.com came from batches that were segregated for distribution or sale only outside of the United States, they were only tested for compliance with the local regulations of the countries in which Alcon intended for them to be distributed and sold.  Lens.com's sales of Alcon lenses that have not been tested for U.S. regulatory compliance are likely to cause irreparable harm to Alcon and consumers because consumers will mistakenly assume that the Alcon lenses have been tested for regulatory compliance in the United States.  This severely negatively impacts the safety and well-being of contact lens consumers while also harming Alcon's reputation and goodwill.

### c)      O2 OPTIX® Sales

90.     While it was conducting test buys for DAILIES AQUACOMFORT PLUS® lenses in 2017, Alcon discovered that Lens.com was selling Alcon O2 OPTIX® lenses in the United States and arranged test buys for O2 OPTIX® lenses as well.  The test buys confirmed that Lens.com was selling O2 OPTIX® lenses in the United States even though Alcon stopped distributing those products in the United States in 2014 and no longer supports those products in the United States.



91.     Lens.com's sales of unsupported O2 OPTIX® products in the United States will cause consumers to be confused, or to believe that the products sold by Lens.com continue to be

supported by Alcon in the U.S. market when they are not.  As such, Lens.com's sales of O2 OPTIX® products in the United States violate Sections 32 and 43(a) of the Lanham Act.

92.     By selling O2 OPTIX® lenses in the United States, a market in which Alcon does not offer this product, Lens.com has removed the transparency of the market.  If a recall or other notification to retailers, ECPs, or patients were required, it would be more difficult for Alcon to effectively communicate the recall to all necessary parties.  Accordingly, Lens.com's misconduct puts consumers at risk and jeopardizes Alcon's reputation and goodwill.

93.     Additionally, because O2 OPTIX® lenses are no longer sold in the United States, they are only tested for compliance with the local regulations of the countries in which Alcon distributes them.  Lens.com's sales of Alcon lenses that have not been tested for U.S. regulatory compliance is likely to cause irreparable harm to Alcon and consumers because consumers will mistakenly assume that the Alcon lenses have been tested for regulatory compliance in the United States.  This severely negatively impacts the safety and well-being of contact lens consumers while also harming Alcon's reputation and goodwill.

94.     If Lens.com continues its wrongful conduct, Alcon is and will continue to be irreparably harmed, including through loss of goodwill, reputation, and the ability to monitor the supply chain for Alcon products being sold in the United States, which could interfere with Alcon's ability to communicate with ECPs or patients regarding their Alcon lenses, or for Alcon to keep counterfeit products out of the United States.  Such irreparable harm will continue unless Lens.com is restrained from its continuing violation of the Lanham Act.  Alcon has no adequate remedy at law.

### d)     AIR OPTIX® plus HYDRAGLYDE® Shipments

95.     In March 2018, Alcon conducted test buys to ensure that only products in U.S.-specific AIR OPTIX® plus HYDRAGLYDE® packaging were being sold in the United States.  It

ny-1323140

bought products from a variety of online sources, including websites operated by Lens.com. According to the test buys that Alcon has done, Lens.com is selling AIR OPTIX® plus HYDRAGLYDE® lenses in the Rest of World packaging, which Alcon does not distribute or support for sale in the United States.

96.     Additionally, Lens.com advertises AIR OPTIX® plus HYDRAGLYDE® lenses in discontinued packaging on its www.lens.com website, as well as on its affiliated websites, including www.justlenses.com, www.contactsamerica.com, and www.eurolens.com.  By advertising the outdated AIR OPTIX® plus HYDRAGLYDE® packaging on its websites, Lens.com infringes Alcon's trademark rights in its ALCON Contact Lens Marks.  Additionally, Lens.com misleads consumers into thinking the products that it is advertising are approved for sale in the U.S., when they are not.  Finally, by advertising products with outdated packaging and then shipping AIR OPTIX® plus HYDRAGLYDE® products in different packaging, Lens.com falsely advertises its available inventory.

97.     Lens.com's sales of unsupported AIR OPTIX® plus HYDRAGLYDE® products in the United States will cause consumers to be confused, or to believe that the products sold by Lens.com continue to be supported by Alcon in the U.S. market when they are not.  As such, Lens.com's sales of AIR OPTIX® plus HYDRAGLYDE® products in the United States violate Sections 32 and 43(a) of the Lanham Act.

98.     In addition, Lens.com's sales in the United States of AIR OPTIX® plus HYDRAGLYDE® lenses that have not been tested for U.S. regulatory compliance hinder Alcon's legitimate quality control measures, including the ability to effectively recall products if necessary.  Lens.com's sales of Alcon lenses that are not tested for U.S. regulatory compliance, including AIR OPTIX® plus HYDRAGLYDE® lenses, are likely to cause irreparable harm to

Alcon and consumers.  Consumers will mistakenly assume that the Alcon lenses have all been

tested for regulatory compliance in the United States.  This severely negatively impacts the

safety and well-being of contact lens consumers while also harming Alcon's reputation and

goodwill.

<u>FIRST CLAIM FOR RELIEF</u><br>
<strong>Trademark Infringement Under 15 U.S.C. § 1114</strong>

99.      Alcon repeats and realleges each allegation set forth in paragraphs 1 through 98

above as if fully set forth herein.

100.      The acts of Lens.com described above constitute trademark infringement in

violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

101.      Alcon has valid and protectable rights in each of the registered ALCON Marks.

These rights predate Lens.com's sales of DAILIES AQUACOMFORT PLUS® products that are

materially different from the DAILIES AQUACOMFORT PLUS® products that Alcon has

distributed in the United States since at least as early as May 2017, Lens.com's sales of non-

compliant AIR OPTIX® Colors products, Lens.com's advertisement of prior AIR OPTIX® plus

HYDRAGLYDE® packaging on its websites, Lens.com's sales of Rest of World AIR OPTIX®

plus HYDRAGLYDE® products, and Lens.com's sales of the discontinued O2 OPTIX®

products.

102.      On information and belief, Lens.com had actual knowledge of Alcon's ownership

and use of the ALCON Marks prior to May 2017, and of the change to the DAILIES

AQUACOMFORT PLUS® packaging that would take place in May 2017, the fact that the AIR

OPTIX® Colors products sold by Lens.com are not intended or approved for sale in the U.S., the

change to the AIR OPTIX® plus HYDRAGLYDE® U.S-based packaging in January 2018, the

fact that the Rest of World AIR OPTIX® plus HYDRAGLYDE® lenses are not approved for sale

33

in the U.S., and the fact that Alcon does not authorize sales of O2 OPTIX® lenses in the United States.

103.     Alcon has not authorized Lens.com to use any of the ALCON Marks in connection with the sale of any Alcon contact lens products.

104.     Lens.com's unauthorized use of the registered ALCON Marks as alleged above is likely to cause confusion, mistake, or deception on the part of consumers as to the source, nature, and quality of the goods Lens.com is offering under the registered ALCON Marks, constituting trademark infringement in violation of 15 U.S.C. § 1114.

105.     As a direct and proximate result of Lens.com's wrongful conduct, Alcon has been, is now, and will continue to be irreparably injured and damaged by Lens.com's aforementioned acts, and unless Lens.com is enjoined by the Court, Alcon will suffer further harm to its name, reputation, and goodwill.  This harm constitutes an injury for which Alcon has no adequate remedy at law.

106.     On information and belief, Lens.com has acted willfully to usurp Alcon's rights, and Lens.com should be held liable to Alcon for treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

### SECOND CLAIM FOR RELIEF
#### False Designation of Origin Under 15 U.S.C. § 1125(a)

107.     Alcon repeats and realleges each allegation set forth in paragraphs 1 through 106 above as if fully set forth herein.

108.     The acts of Lens.com described above constitute unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

109.     Alcon has valid and protectable rights in the ALCON Contact Lens Marks.  These rights predate Lens.com's sale of DAILIES AQUACOMFORT PLUS® products that are

materially different from the DAILIES AQUACOMFORT PLUS® products that Alcon has

distributed in the United States since at least as early as May 2017, Lens.com's sale of non-

compliant AIR OPTIX® Colors products, Lens.com's advertisement of prior AIR OPTIX® plus

HYDRAGLYDE® packaging on its websites, Lens.com's sales of Rest of World AIR OPTIX®

plus HYDRAGLYDE® products, and Lens.com's sales of the discontinued O2 OPTIX® products

in the United States.

110.    On information and belief, Lens.com had actual knowledge of Alcon's and

Novartis's ownership and use of the ALCON Marks and the ALCON DACP Marks prior to May

2017, and of the change to the DAILIES AQUACOMFORT PLUS® packaging that would take

place in May 2017.

111.    On information and belief, Lens.com also had actual knowledge of Alcon's and

Novartis's ownership and use of the ALCON Marks and AIR OPTIX Marks prior to January

2018.

112.    On information and belief, Lens.com also had actual knowledge of Alcon's and

Novartis's ownership and use of the O2 OPTIX Marks, the CIBA VISION® mark, and the

stylized CIBA VISION® mark prior to when Alcon discontinued those products in the United

States in late 2013 and stopped distributing them in the U.S. in early 2014.

113.    Lens.com's unauthorized use of the ALCON Contact Lens Marks as alleged

above is likely to cause consumers to believe that there is a relationship between Lens.com and

Alcon and/or that Lens.com's products come from Alcon.  Such association constitutes false

designation of origin, in violation of 15 U.S.C. § 1125(a).

114.    As a direct and proximate result of Lens.com's wrongful conduct, Alcon has

been, is now, and will continue to be irreparably injured and damaged by Lens.com's

aforementioned acts, and unless Lens.com is enjoined by the Court, Alcon will suffer further harm to its name, reputation, and goodwill.  This harm constitutes an injury for which Lens.com has no adequate remedy at law.

115.    On information and belief, Lens.com has acted willfully to usurp Alcon's rights, with full knowledge of and intent to cause harm to Alcon, and Lens.com should be held liable to Alcon for treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

**THIRD CLAIM FOR RELIEF**
**Deceptive Trade Practices Under New York General Business Law § 349**

116.    Alcon repeats and realleges each allegation set forth in paragraphs 1 through 115 above as if fully set forth herein.

117.    The acts of Lens.com described above constitute consumer-oriented deceptive trade practices under New York General Business Law § 349.

118.    Lens.com's sales of DAILIES AQUACOMFORT PLUS® products in packaging that is materially different from the DAILIES AQUACOMFORT PLUS® products that Alcon has distributed in the United States since at least as early as May 2017 have caused and will cause specific and direct harm to consumers in New York and to the public interest.  The sale or distribution of DAILIES AQUACOMFORT PLUS® lenses in the prior packaging without U.S.-specific lot numbers, readily accessible detailed use instructions, a toll-free patient helpline and email address, a dedicated DAILIES® support website address, and the identifying American flag, harms consumers and impacts public safety by, among other things, reducing consumers' ability to access important safety and use information and impairing Alcon's quality control, consumer communication, and supply chain monitoring measures.

119.    Lens.com's sales of AIR OPTIX® Colors products from batches that Alcon does not intend for distribution in the United States have caused and will cause specific and direct

36

harm to consumers in New York and to the public interest.  Because Lens.com is improperly

selling or distributing AIR OPTIX® Colors lenses in the United States that may not meet U.S.

regulatory standards, sales of these products in the United States are likely to cause irreparable

harm to Alcon and its consumers because consumers will mistakenly assume that the Alcon

lenses have been tested for regulatory compliance in the United States.

120.    Lens.com's sales of AIR OPTIX® plus HYDRAGLYDE® products in packaging

that is materially different from the AIR OPTIX® plus HYDRAGLYDE® product packaging that

Alcon has distributed in the United States since at least as early as February 2018 have caused

and will continue to cause specific and direct harm to consumers in New York and to the public

interest.  The sale or distribution of AIR OPTIX® plus HYDRAGLYDE® lenses in the old

packaging without U.S.-specific lot numbers, readily accessible detailed use instructions, a toll-

free patient helpline and email address, a dedicated AIR OPTIX® support website address, and

the identifying American flag, harms consumers and impacts public safety by, among other

things, reducing consumers' ability to access important safety and use information and impairing

Alcon's quality control, consumer communication, and supply chain monitoring measures.

121.    Lens.com's sales of O2 OPTIX® products that Alcon no longer distributes or

supports in the United States have caused and will cause specific and direct harm to consumers

in New York and to the public interest.  Because Lens.com is improperly selling or distributing

O2 OPTIX® lenses in the United States, outside of Alcon's transparent distribution market,

Lens.com is harming consumers by impeding Alcon's ability to effectively communicate with

consumers, ECPs, and retailers in the event of a recall or other notification.  Additionally,

because the O2 OPTIX® lenses are no longer tested for U.S. regulatory compliance, sales of

these products in the United States are likely to cause irreparable harm to Alcon and its

ny-1323140

consumers because consumers will mistakenly assume that the O2 OPTIX® lenses have been tested for regulatory compliance in the United States.

122.    As a direct and proximate result of Lens.com's wrongful conduct, Alcon has been, is now, and will continue to be irreparably injured and damaged by Lens.com's aforementioned acts, and unless Lens.com is enjoined by the Court, Alcon will suffer further harm to its name, reputation, and goodwill.  This harm constitutes an injury for which Lens.com has no adequate remedy at law.

123.    On information and belief, Lens.com has acted willfully to usurp Alcon's rights, with full knowledge of and intent to cause harm to Alcon.

**FOURTH CLAIM FOR RELIEF**
**False Advertising Under New York General Business Law § 350**

124.    Alcon repeats and realleges each allegation set forth in paragraphs 1 through 123 above as if fully set forth herein.

125.    The acts of Lens.com described above constitute false advertising under New York General Business Law § 350.

126.    Lens.com's unauthorized use of the ALCON Contact Lens Marks as alleged above is likely to cause consumers to believe that there is a relationship between Lens.com and Alcon and/or that Lens.com's products come from Alcon.  Such association constitutes false advertising under New York General Business Law § 350.

127.    Lens.com's advertisement on its websites of O2 OPTIX® products that are not distributed by Alcon in the United States deceives customers into believing that such lenses are approved for sale in the United States.  Such materially misleading advertising is harmful to consumers as it leads them to believe the products they are purchasing are genuine, when instead

ny-1323140

Lens.com is impairing Alcon's quality control, consumer communication, and supply chain monitoring measures.

128.     Additionally, Lens.com's advertisement of prior Alcon product packaging is materially misleading to consumers for several reasons.  First, the use of the prior packaging on Lens.com's websites infringes Alcon's trademark rights in its ALCON Contact Lens Marks. Second, the advertisement of the prior packaging misleads consumers into thinking such products are approved for sale in the U.S.  Third, the advertisement of the prior product packaging deceives customers into believing that those products are approved for sale in the United States.  Such materially misleading advertising is harmful to consumers who receive products for which Alcon's quality control, consumer communication, and supply chain monitoring is impaired.

129.     As a direct and proximate result of Lens.com's wrongful conduct, Alcon has been, is now, and will continue to be irreparably injured and damaged by Lens.com's aforementioned acts, and unless Lens.com is enjoined by the Court, Alcon will suffer further harm to its name, reputation, and goodwill.  This harm constitutes an injury for which Alcon has no adequate remedy at law.

130.     On information and belief, Lens.com has acted willfully to usurp Alcon's rights, with full knowledge of and intent to cause harm to Alcon.

### FIFTH CLAIM FOR RELIEF
### Trademark Infringement Under New York Common Law

131.     Alcon repeats and realleges each allegation set forth in paragraphs 1 through 130 above as if fully set forth herein.

132.     The acts of Lens.com described above constitute trademark infringement under the common law of the State of New York.

ny-1323140

133.     As a direct and proximate result of Lens.com's wrongful conduct, Alcon has

been, is now, and will continue to be irreparably injured and damaged by Lens.com's

aforementioned acts, and unless Lens.com is enjoined by the Court, Alcon will suffer further

harm to its name, reputation, and goodwill.  This harm constitutes an injury for which Alcon has

no adequate remedy at law.

**SIXTH CLAIM FOR RELIEF**
**Unfair Competition Under New York Common Law**

134.     Alcon repeats and realleges each allegation set forth in paragraphs 1 through 133

above as if fully set forth herein.

135.     The acts of Lens.com described above constitute unfair competition under the

common law of the State of New York.

136.     As a direct and proximate result of Lens.com's wrongful conduct, Alcon has

been, is now, and will continue to be irreparably injured and damaged by Lens.com's

aforementioned acts, and unless Lens.com is enjoined by the Court, Alcon will suffer further

harm to its name, reputation, and goodwill.  This harm constitutes an injury for which Alcon has

no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Alcon prays for judgment as follows:

1.     That judgment be entered in favor of Alcon and against Lens.com on each and

every Claim of this Complaint;

2.     For entry of an order and judgment requiring that Lens.com and its officers,

directors, members, agents, servants, employees, affiliates, parents, subsidiaries, assigns, and

successors in interest, and those persons acting in concert or participating with it, be enjoined

during the pendency of this action and permanently thereafter from (a) using in any manner the

40

ALCON Contact Lens Marks in connection with the sale of any product that is materially different from products that Alcon distributes in the United States; (b) doing any act or thing calculated or likely to cause confusion or mistake in the minds of the members of the public or prospective customers as to the source of the products offered or distributed by Lens.com, or likely to confuse members of the public, or prospective customers, into believing that there is some connection between Alcon and Lens.com or any other entity owned by or associated with Lens.com; (c) importing, distributing, or selling any Alcon contact lenses that may not comply with or have been tested against U.S. regulatory standards; (d) importing, distributing, or selling any Alcon contact lenses that are materially different from those distributed by Alcon in the United States; (e) importing, distributing, or selling contact lenses that Alcon does not distribute in the United States; (f) otherwise competing unfairly with Alcon in any manner; or (g) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in parts (a) through (f) of this paragraph 2;

3.      For entry of an order and judgment directing Lens.com, pursuant to 15 U.S.C.§ 1116(a), to file with this Court and serve upon Alcon within thirty (30) days after entry of the injunction, a report in writing under oath setting forth in detail the manner and form in which Lens.com has complied with the injunction and ceased selling Alcon products that are materially different from products that Alcon distributes in the United States;

4.      For entry of an order and judgment directing Lens.com to disclose to Alcon all of Lens.com's suppliers of Alcon products;

5.      For a judgment in the aggregate amount of (a) Lens.com's profits, (b) Alcon's actual damages, (c) the costs of this action pursuant to 15 U.S.C. § 1117, and (d) restitution

and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have

been obtained by Lens.com as a result of its unlawful and unfair acts or practices;

6.     That the Court award enhanced damages pursuant to 15 U.S.C. § 1117(a);

7.     That the Court award prejudgment interest on all amounts awarded;

8.     That the Court award Alcon reasonable attorneys' fees; and

9.     That the Court award such other relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Alcon hereby demands

trial by jury on all issues raised by the Complaint.


Dated:  New York, New York
        May 10, 2018

MORRISON & FOERSTER LLP

By: /s/ Jamie A. Levitt
    Jamie A. Levitt
    Sarah L. Prutzman
    250 West 55th Street
    New York, New York  10019
    Telephone: (212) 468-8000
    Facsimile: (212) 468-7900
    Email:  JLevitt@mofo.com
            SPrutzman@mofo.com

    Jennifer Lee Taylor (*Pro Hac Vice*)
    425 Market Street
    San Francisco, California  94105
    Telephone:  (415) 268-7000
    Facsimile:  (415) 268-7522
    Email:  JTaylor@mofo.com

Attorneys for Plaintiff
ALCON LABORATORIES, INC.