FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JAN 17 2019 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ALCON LABORATORIES, INC.,

                                 Plaintiff,

    - against -

LENS.COM, INC.,

                                Defendant.
-----------------------------------------------------------------x

**OPINION AND ORDER**

18-cv-407 (NG) (RLM)

GERSHON, United States District Judge:

    Plaintiff Alcon Laboratories, Inc. ("Alcon") brings this action alleging trademark infringement under 15 U.S.C. § 1114 and New York common law; false designation of origin under 15 U.S.C. § 1125(a); deceptive trade practices under New York General Business Law § 349; false advertising under New York General Business Law § 350; and unfair competition under New York common law. Defendant Lens.com, Inc. ("Lens.com") is a corporation that operates websites selling contact lenses, including contact lenses produced by plaintiff Alcon. Alcon alleges that Lens.com's sales of its products are "unauthorized" and consequently injurious to consumer safety and Alcon's reputation. Lens.com maintains that it purchases genuine Alcon contact lenses in the United States and abroad and sells them to customers at discount prices in frustration of Alcon's anticompetitive distribution scheme. The merits of the claims are not now under consideration. Before me is defendant's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or alternatively, to transfer venue to the District of Nevada pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, Lens.com's motion is denied.

I.     BACKGROUND

Alcon is a corporation organized under the laws of Delaware with its principal place of business in Texas. In 2017, Alcon sold nearly $15 million of Alcon contact lenses to New York eye care practitioners. Lens.com is a corporation organized under the laws of Nevada with its principal place of business in Nevada. Lens.com ships orders of contact lenses purchased from its websites from a warehouse and distribution center in Missouri.

According to the Amended Complaint and declarations accompanying this motion, in Fall 2017, Alcon hired a private investigator to purchase its products from Lens.com. Between October and December 2017, the investigator placed orders for Alcon products "Dailies Aquacomfort Plus" and "O2 Optix" from Lens.com. The orders arrived, containing the products, at an address in Queens, New York with shipping labels indicating shipment from Lens.com in Missouri. A second investigator, subcontracted by the first investigator, placed an order in November 2017 for "Dailies Aquacomfort Plus" from Lens.com and received the products at an address in Staten Island, New York apparently from Lens.com in Missouri.

As it relates to jurisdiction, Alcon alleges that Lens.com is subject to specific jurisdiction in New York under New York's long-arm statute, N.Y. C.P.L.R. § 302, based on its actions as described in the First Amended Complaint. Those actions include:

1. Operating multiple highly interactive internet sales websites through which consumers, including New York consumers, can order contact lenses shipped anywhere in the United States, including to New York (Am. Compl. ¶¶ 71, 74);

2. Shipping products, including Alcon products, to New York (*Id.* ¶ 84);

3. Importing hundreds of thousands of dollars' worth of contact lenses into the United States through John F. Kennedy International Airport in Queens, New York (*Id.* ¶ 79);

4. Verifying contact lens prescriptions with New York eye care practitioners (*Id.* ¶ 80);

5. Featuring reviews from hundreds of customers in New York on its website, including one New York customer displayed as having placed 42 orders (*Id.* ¶ 77);

6. Promoting itself on social media where it engages with thousands of "fans" and "followers," many of whom are New York residents (*Id.* ¶ 78); and

7. Contracting with New York based company LivePerson, Inc. to provide customer service "live chat" software on its websites (*Id.* ¶ 75).

## II. PERSONAL JURISDICTION

### 1. Standard of Review

Prior to discovery, a plaintiff may defeat a Rule 12(b)(2) motion to dismiss by making a *prima facie* showing of personal jurisdiction. *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 196 (2d Cir. 1990). A district court construes any factual averments in the light most favorable to the plaintiff and resolves all doubts in the plaintiff's favor. *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). The court may consider materials outside the pleadings without converting a motion to dismiss for lack of personal jurisdiction into a motion for summary judgment. *See Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013).

Determining whether a *prima facie* case of personal jurisdiction over a foreign defendant has been made requires a two-step inquiry. *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). First, the court must determine whether the defendant is subject to jurisdiction under the law of the forum state. *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014). Second, the court must consider whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution. *Id.*

### 2. Personal Jurisdiction under New York Law

New York extends personal jurisdiction over non-domiciliaries under two statutes: CPLR §§ 301 (general jurisdiction) and 302 (specific jurisdiction). Plaintiff relies solely on CPLR

§ 302(a)(1), which provides that a court may exercise personal jurisdiction over any non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state . . . ." Section 302(a)(1) confers personal jurisdiction if two conditions are met: "first, the non-domiciliary must transact business within the state; second, the claim against the non-domiciliary must arise out of that business activity." *CutCo Indus.*, 806 F.2d at 365 (internal quotation marks omitted).

"Proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Eades v. Kennedy, PC Law Office*, 799 F.3d 161, 168 (2d Cir. 2015) (alterations omitted) (quoting *Chloé*, 616 F.3d at 170). "Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quoting *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (N.Y. 2007)). Thus, a "single act of shipping a product might well be sufficient, by itself, to subject a nondomiciliary to the jurisdiction of a New York court under section 302(a)(1)." *Hypnotic Hats, Ltd. v. Wintermantel Enter., LLC*, 2016 WL 7451306, at *2 (S.D.N.Y. Dec. 27, 2018) (alterations omitted) (quoting *Chloé*, 616 F.3d at 170).

Alcon has readily established that jurisdiction over Lens.com is proper under § 302(a)(1). Lens.com does not dispute that it operates highly interactive websites offering products for sale in New York or that it has shipped orders of Alcon contact lenses to New York. Instead, Lens.com argues that "test buys" by investigators do not establish jurisdiction. However, Lens.com's contention conflicts with *Chloé*, the leading case in this Circuit on "personal jurisdiction in the age of internet commerce." *Chloé*, 616 F.3d at 165.

In *Chloé*, the Second Circuit held that personal jurisdiction could be exercised over an out-of-state employee where the employee had shipped a single counterfeit handbag into New York to an administrative assistant at plaintiff's law firm, and the employer engaged in extensive business activity involving New York. *Id.* The defendant employer's extensive business contacts with New York principally consisted of operating a website offering handbags for sale to New York consumers and shipping 52 orders of non-Chloé handbags into New York. *Id.* at 166. It was of no consequence that the only purchase of a Chloé-branded handbag was to an employee of plaintiff's counsel. *Id.* at 170; *see Cartier v. Seah LLC*, 598 F. Supp. 2d 422, 425 (S.D.N.Y. 2009). Here, Alcon alleges not only the particular sales described in detail but also that Lens.com has made countless other sales unconnected to this litigation to customers in New York, as well as imported goods through New York airports and engaged with New York customers on social media. Accepting Alcon's allegations as true, it has satisfied the first requirement of § 302(a)(1).

The second requirement has also been met, as the claims asserted arise out of allegations that Lens.com offered and sold allegedly unauthorized contact lenses in New York through its websites. Lens.com argues that, to the extent this court finds that its activities support personal jurisdiction in New York, the "arising from" prong limits consideration of its activities to those that concern the specific "product lines" of Alcon contact lenses at issue in this case. This argument too was rejected in *Chloé* where the Second Circuit found that all of defendant's sales of handbags in New York, not just its sales of Chloé handbags, were relevant to contacts with New York. *Id.* at 167. In this case, Lens.com's alleged activity in New York demonstrate "a larger business plan purposefully directed at New York consumers." *Id.* Accordingly, Alcon has made a *prima facie* showing of jurisdiction under § 302(a)(1).

3. Due Process

I must next "analyze whether personal jurisdiction comports with the Due Process Clause." *Id.* at 164. This analysis consists of two components—the "minimum contacts" inquiry and the "reasonableness" inquiry. *Id.* at 171.

"Due process considerations require that the defendant 'have certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 169 (2d Cir. 2013) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Although Lens.com does not dispute that it makes sales in New York, it nevertheless argues that it did not have "fair warning" of the possibility of being hauled into court in New York. But, "this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum . . . ." *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 472 (1985). Alcon's allegations establish that Lens.com purposefully directs itself toward New York consumers through, *inter alia*, in-state sales, interactive websites, and advertising. These activities are sufficient to satisfy the minimum contacts requirement. That Lens.com may engage in similar activities directed toward customers in other states does nothing to alter the conclusion that it had "fair warning," based on its activities purposefully directed toward New York, that it could be sued in New York. *See EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 98 (2d Cir. 2016).

In evaluating whether the exercise of personal jurisdiction is reasonable under the Due Process Clause, courts consider the following five factors: (1) the burden on the defendant; (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared

interest of the several States in furthering fundamental substantive social policies. *Chloé*, 616 F.3d at 164. On balance these factors support the exercise of personal jurisdiction over Lens.com. First, the burden on Lens.com of litigation in New York is lessened by Alcon's willingness to travel to the location of any defense witnesses for depositions. Admittedly, if the case goes to trial, there will be some burden on Lens.com's owner. But the Second Circuit recognized, as long ago as 1996, that "the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 574 (2d Cir. 1996). Second, New York has a strong interest in this action because it relates to the consumer safety of its residents. Alcon alleges that some products sold on Lens.com bearing its trademarks are counterfeit and noncompliant with U.S. Food and Drug Administration requirements. (Am. Compl. ¶ 88, 94). These allegations implicate New York's interest in protecting the health of its citizens, as well as its interest in keeping its large market for contact lenses free of harmful goods. Third, Alcon has a strong interest in obtaining relief in New York, where it conducts significant business. With regard to the fourth and fifth factors, neither party offers persuasive argument or evidence to support a conclusion that those factors favor or disfavor New York jurisdiction. Therefore, I weigh those factors as neutral and conclude that, overall, the exercise of personal jurisdiction over Lens.com is reasonable.

Lens.com relies heavily on *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. — (2017), which held that the Due Process Clause of the Fourteenth Amendment did not permit a state court's exercise of specific jurisdiction over state law claims of nonresident plaintiffs against a nonresident defendant. This a not a state court. It is not even a federal court exercising diversity jurisdiction. This is a federal court exercising federal question jurisdiction. Therefore, the federalism concerns animating the *Bristol-Myers Squibb* decision have no applicability here.

Applying traditional due process concerns, exercising personal jurisdiction over Lens.com is entirely constitutional.

   III.   VENUE

Alternatively, Lens.com seeks a transfer of venue to the District of Nevada pursuant to 28 U.S.C. § 1404(a).[1] The change of venue statute, 28 U.S.C. § 1404(a), provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought." A district court has broad discretion in determining a motion for transfer and considers a variety of factors such as:

> (1) convenience of the witnesses; (2) convenience of the parties; (3) the locus of the operative facts; (4) the availability of process to compel the attendance of unwilling witnesses, (5) the location of relevant documents and the relative ease of access to sources of proof, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances.

*Dealtime.com v. McNulty*, 123 F. Supp. 2d 750, 754–55 (S.D.N.Y. 2000). "There is no strict formula for the application of these factors, and no single factor is determinative." *Sarracco v. Ocwen Loan Servicing, LLC*, 220 F. Supp. 3d 346, 356 (E.D.N.Y. 2016).

The moving party bears the burden of establishing "(1) that the action is one that might have been brought in the district to which the movant seeks to have it transferred, and (2) that transfer is appropriate based on the convenience of the parties, the convenience of witnesses, and the interests of justice." *Fifth Ave. of Long Island Realty Assocs. v. Caruso Mgmt. Co.*, 2009 WL 412126, at *15 (E.D.N.Y. Feb. 17, 2009) (citations and internal quotation marks omitted). In a motion to change venue, the movant bears the burden of establishing the propriety of transfer by

---

[1]   Lens.com does not argue that venue is improper in this district. Lens.com's failure to bring a motion under Rule 12(b)(3) waives the objection to venue. Fed. R. Civ. P. 12(g)(2), (h)(1)(A).

"clear and convincing evidence." *N.Y. Marine & Gen. Ins. Co v. Lafarge N. Am., Inc.*, 599 F.2d 102, 113–14 (2d Cir. 2010).

An action "could have been brought" in another forum if the defendant would have been amendable to personal jurisdiction in that forum at the time the action was commenced and if venue is proper there. *Dealtime.com*, 123 F. Supp. 2d at 755. Lens.com is the only defendant in this action and resides in the District of Nevada; thus this action could have been brought there. Nevertheless, based on a consideration of the balancing factors, I conclude that a transfer is not warranted.

1. Convenience of the Witnesses

Lens.com has provided detailed information concerning the expected testimony of one witness, Mr. Cary Samourkachian, who is Lens.com's president, owner, and only employee. Mr. Samourkachian resides in Nevada where Lens.com is based. Thus, Lens.com argues, litigation in New York would be burdensome for Mr. Samourkachian as it will force him to abandon running Lens.com to travel to New York. Lens.com identifies another Nevada-based witness who is a Lens.com "independent contractor," but it provides only the thinnest description of his expected testimony, making evaluation of the relevance of his testimony impossible.

On the other hand, Alcon argues that its key trial witness Mr. Richard Fabio, who is its National Account Director of e-Commerce, would be inconvenienced by a transfer because he resides in New York. Mr. Fabio states that he would testify to Alcon's online sales strategy, its distribution channels, and the harm Lens.com causes to Alcon and its authorized sellers. Lens.com argues that Mr. Fabio's testimony, while perhaps relevant, is testimony that any number of Alcon employees could provide. To this point, Lens.com notes that other Alcon employees located in other states have provided declarations in connection with this litigation that appear to address the

same, or indeed more pertinent, issues. While I agree that the convenience of Mr. Fabio is not an imperative, as Alcon is a large corporation with many employees who could potentially testify concerning the issues in this case, I am not persuaded that this case must be moved to Nevada to convenience Mr. Samourkachian. Mr. Samourkachian is not a non-party witness incidentally dragged into this litigation. As Lens.com's president and owner, he is responsible for all of Lens.com's business decisions, including its decisions to purposefully avail itself of the privilege of doing business in New York. Thus, this factor favors transfer, but only marginally.

2. Convenience of the Parties

"The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 399 (S.D.N.Y. 2014) (citations omitted). Lens.com argues that transfer to Nevada would convenience it, because its headquarters and only employee are in Nevada, without inconveniencing Alcon. Although Alcon is not located in New York, it "chose this forum and has established that there is a material relationship between the underlying controversy and New York, outweighing the fact that [it is] not located here." *It's a 10, Inc. v. PH Beauty Labs, Inc.*, 718 F. Supp. 2d 332, 337 (S.D.N.Y. 2010). And, Lens.com's convenience has already been considered above because its arguments applicable to this factor are identical to the arguments in favor of Mr. Samourkachian's convenience as a witness. Thus, the convenience of the parties is neutral.

3. Locus of the Operative Facts

Lens.com argues that the locus of operative facts is Nevada because all of Lens.com's decisions regarding purchase, import, and sales of contact lenses were made in Nevada. Alcon

argues that the locus of operative facts is New York because Lens.com imports and sells infringing contact lenses in New York.

"Today, almost all courts follow the rule that a claim of trademark infringement takes place where the allegedly infringing sales occur." 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 32:38.40 (5th ed.) (citing *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. 1956)). Applying this majority rule results in a clear answer that the infringement in this case takes place in New York.[2] *See, e.g., It's a 10*, 718 F. Supp. 2d at 337. Additionally, two of Alcon's claims arise under New York State law and concern only sales to New York consumers.[3] Therefore, I conclude that the locus of operative facts weighs against transfer.

4. Availability of Process to Compel the Attendance of Unwilling Witnesses

As neither party argues that this factor is significant, I do not consider it.

5. Location of Relevant Documents

"In an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly." *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008) (citations omitted). Although Lens.com asserts that it maintains its documents in Nevada, it does not provide any argument as to why it would be burdensome to transmit those documents in connection with this litigation. Accordingly, this factor is neutral.

---

[2] Lens.com cites cases such as *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 21 (S.D.N.Y. 2012), where the court found the place of the design and development of the allegedly infringing product to be a relevant factor. Even if I were to consider that approach correct, here it would have no bearing because Lens.com does not design or develop products.

[3] New York General Business Law §§ 349 and 350 are applicable to trade occurring "in this state."

6. Relative Means of the Parties

Although Lens.com points to Alcon's annual sales in the billions as evidence of its substantial means, Lens.com provides no analogous data about its own means to allow an examination of the parties' *relative* means. Instead Lens.com compares the relative means of the parties in terms of number of employees of each entity. That Lens.com has chosen a business model in which it has a single-owner employee and outsources all business activities to contractors does not make it akin to a local "Mom and Pop" shop. Alcon alleges that Lens.com's sales for the twelve months ending in February 2018 were nearly $115 million. (Am. Compl. at ¶71). On oral argument, Lens.com did not dispute that both parties have the means to conduct this litigation in either venue. Under these circumstances, this factor is neutral. *See, e.g., Alcon Labs., Inc. v. Allied Vision Grp., Inc.*, 18-cv-2486 (E.D.N.Y. Dec. 22, 2018); *It's a 10*, 718 F. Supp. 2d at 338.

7. Forum's Familiarity with the Governing Law

"The presence of state law claims supports retaining a case in the state whose laws are invoked." *Nabisco, Inc. v. Brach's Confections, Inc.*, 2000 WL 1677935, at *4 (S.D.N.Y. Nov. 8, 2000). As already discussed, plaintiff asserts claims under New York General Business Law and New York common law. As this court is "undoubtedly more familiar with the law governing the New York state law claims," this factor weighs against transfer. *Fifth Ave. of Long Island Realty Assocs.*, 2009 WL 412126, at *16 (citations and internal quotation marks omitted). Although federal courts are capable of applying the substantive law of different states, *Dwyer v. Gen. Motors Corp.*, 853 F. Supp. 690, 694 (S.D.N.Y. 1994), I accord this factor some weight.

8. Plaintiff's Choice of Forum

The most significant dispute between the parties concerning venue is the extent to which I should give weight to the plaintiff's choice of forum. Alcon argues that, as the plaintiff, its

choice of forum is presumptively entitled to "substantial deference." Lens.com, however, asserts that, because Alcon is not a resident of New York, its decision to file in New York should be given "no weight."

"A plaintiff's choice of forum, while normally accorded significant weight, is given less deference if the chosen forum is not the plaintiff's home state." *AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 531 (S.D.N.Y. 2004). However, when, as here, the plaintiff alleges that it and defendant engage in ongoing business activity in the forum that is relevant to this litigation, the plaintiff's choice of forum is entitled to more than nominal weight. *See id.* Accordingly, this factor weighs against transfer.

9. Trial Efficiency and the Interest of Justice

Under this factor, courts typically consider the docket congestion of the forum court in comparison to the proposed transferee court. Here, the median times for disposition of civil cases are similar between the two districts, as Lens.com acknowledges. And Lens.com does not advance any other argument concerning "the interest of justice." This factor is neutral.

In sum, although I recognize that a transfer of this case to Nevada would be more convenient for Lens.com's owner, on balance the factors do not indicate that a transfer is warranted. Accordingly, Lens.com's motion for a transfer of venue is denied.

IV.     CONCLUSION

For the reasons discussed above, defendant's motion to dismiss for lack of personal jurisdiction, or alternatively to transfer venue is denied.

**SO ORDERED.**

/s/ *Nina Gershon*
**NINA GERSHON**
**United States District Judge**

Dated: January 16, 2019
      Brooklyn, New York